# EXHIBIT C

1

1              UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3

4  JERALD FRIEDMAN, INDIVIDUALLY AND ON  )
    BEHALF OF ALL OTHERS SIMILARLY      )
5  SITUATED,                              )
                                            )
6                            PLAINTIFF, )  CASE NO.
                                          )  2:14-00034
7                vs.                            )
                                            )
8  AARP, INC., AARP SERVICES, INC.,     )
    AARP INSURANCE PLAN, UNITEDHEALTH     )
9  GROUP, INC., AND UNITEDHEALTHCARE     )
    INSURANCE,                             )
10                                         )
                                  DEFENDANTS. )
11  _____)

12

13

14

15

16      VIDEOTAPED DEPOSITION OF JERALD FRIEDMAN

17         TAKEN MONDAY, NOVEMBER 12, 2018

18           SANTA MONICA, CALIFORNIA

19

20

21

22

23

24     Reported by Audra E. Cramer, CSR No. 9901
                 Job No. 2018-64514
25

2

```
 1              UNITED STATES DISTRICT COURT
 2              CENTRAL DISTRICT OF CALIFORNIA
 3
 4   JERALD FRIEDMAN, INDIVIDUALLY AND ON   )
     BEHALF OF ALL OTHERS SIMILARLY         )
 5   SITUATED,                              )
                                            )
 6                           PLAINTIFF,     )  CASE NO.
                                            )  2:14-00034
 7                 vs.                      )
                                            )
 8   AARP, INC., AARP SERVICES, INC.,       )
     AARP INSURANCE PLAN, UNITEDHEALTH      )
 9   GROUP, INC., AND UNITEDHEALTHCARE      )
     INSURANCE,                             )
10                                          )
                             DEFENDANTS.    )
11   _____)
12
13
14        VIDEOTAPED DEPOSITION OF JERALD FRIEDMAN, TAKEN
15   ON BEHALF OF THE DEFENDANTS, AT 9:06 A.M., MONDAY,
16   NOVEMBER 12, 2018, AT 120 BROADWAY, SANTA MONICA,
17   CALIFORNIA, BEFORE AUDRA E. CRAMER, CSR NO. 9901,
18   PURSUANT TO NOTICE.
19
20
21
22
23
24
25
```

```
 1   APPEARANCES OF COUNSEL

 2

 3   FOR PLAINTIFF:

 4           GHOZLAND LAW FIRM
             BY:  MICHAEL GHOZLAND, ESQUIRE
 5           626 WILSHIRE BOULEVARD, SUITE 1170
             LOS ANGELES, CALIFORNIA 90017
 6           (213) 334-4570
             michael@ghozlandlawfirm.com
 7

 8   FOR AARP INC., AARP SERVICES, INC., AND AARP TRUST:

 9           BRYAN CAVE LEIGHTON PAISNER LLP
             BY:  GREGORY J. SACHNIK, ESQUIRE
10           2200 ROSS AVENUE, SUITE 3300
             DALLAS, TEXAS 75201
11           (214) 721-8000
             gregory.sachnik@bclplaw.com
12

13   FOR UNITEDHEALTH GROUP, INC., AND UNITEDHEALTHCARE
     INSURANCE:
14
             O'MELVENY & MYERS LLP
15           BY:  JENNIFER B. SOKOLER, ESQUIRE
                  AARON D. HENSON, ESQUIRE
16           7 TIMES SQUARE
             NEW YORK, NEW YORK 10036
17           (212) 326-2000
             jsokoler@omm.com
18           ahenson@omm.com

19

20   ALSO PRESENT:

21           CHRIS BRENNAN, VIDEOGRAPHER

22

23

24

25
```

```
 1              MR. SACHNIK:  Just in general.
 2         Q.   Have you ever picked up the phone and
 3    called AARP?
 4         A.   I don't think so.
 5         Q.   Do you know if you've had any written
 6    communication from you to AARP?
 7              I know AARP has sent you materials,
 8    but...
 9         A.   I don't recall any.
10         Q.   During the time you've been a member of
11    AARP, have you had any complaints with them or
12    about them, excluding this lawsuit?
13         A.   Oh, okay.  No.
14         Q.   Why are you suing AARP?
15         A.   I'm suing them because I believe they
16    are doing a disservice to seniors; that from my
17    understanding they are taking a percentage of
18    the premiums for their own benefit and not --
19    and that should have been given to the
20    policyholders.
21         Q.   Do you believe that AARP has -- is a --
22    the name is valuable?
23         A.   Yes.
24         Q.   Do you believe that their membership
25    and having the membership list would be
```

Case 2:14-cv-00034-DDP-PLA Document 150-5 Filed 12/26/18 Page 6 of 12 Page ID #:5766
Jerald Friedman - November 12, 2018

50

```
 1  important to vendors who would like to have
 2  access to seniors?
 3       A.  Okay.  I guess I'm going to have to
 4  answer that -- do I believe that's something
 5  they should sell?  No.  Do I believe it's
 6  valuable?  Membership lists are valuable in any
 7  organization.  But there's also privacy and
 8  rights that organizations should respect.
 9       Q.  Do you know if you signed a privacy
10  agreement with AARP?
11       A.  I do not recall.
12       Q.  Other than taking what you term is a
13  percentage of the premiums, do you feel that
14  AARP has done anything else wrong?
15       A.  Yes --
16           MR. GHOZLAND:  Real quick.
17           Calls for expert testimony.  Calls for
18  a legal conclusion.
19           You can answer to the best of your
20  ability.
21           THE WITNESS:  Yes.
22  BY MR. SACHNIK:
23       Q.  And what is it?
24       A.  Because since the lawsuit, I am very
25  concerned that they -- that my premiums go to
```

Case 2:14-cv-00034-DDP-PLA Document 150-5 Filed 12/26/18 Page 7 of 12 Page ID #:5767
Jerald Friedman - November 12, 2018

99

1  amended complaint?
2      A.  Correct.
3      Q.  And they added another Plaintiff?
4      A.  Correct.
5      Q.  But you do not know Mrs. McGee?
6      A.  No.
7      Q.  Never spoken with her?
8      A.  No.
9      Q.  Don't know where she lives?
10     A.  No.
11     Q.  In the complaint it says you were
12 "fooled into paying artificially inflated
13 insurance charges for Medicare supplemental
14 insurance."
15         Is that --
16         MR. GHOZLAND:  Can you point out the
17 paragraph where that's contained.
18         THE WITNESS:  You're paraphrasing
19 something.  So I just was curious what you're
20 referring to.
21 BY MR. SACHNIK:
22     Q.  Well, let me go at it another way.
23         What are you claiming Defendants did
24 wrong?
25     A.  I'm claiming Defendants collected an

Case 2:14-cv-00034-DDP-PLA Document 150-5 Filed 12/26/18 Page 8 of 12 Page ID #:5768
Jerald Friedman - November 12, 2018

100

1  insurance commission from UnitedHealthcare of
2  4 -- I believe it's 4.9 percent of the premiums,
3  and that they, in my opinion, held the money in
4  their own trust for their own benefit instead of
5  having that money go directly to the insurance
6  company, which was not fully -- in my opinion,
7  fully disclosed and was an added risk to the --
8  to myself and all similar situated
9  policyholders.
10     Q.  So what is the difference between a
11 commission and a royalty, to your understanding?
12         MR. GHOZLAND:  Object.  Calls for a
13 legal conclusion.  Calls for expert testimony.
14         You can answer to the best of your
15 ability.
16         THE WITNESS:  Well, commission is -- an
17 insurance commission is regulated by insurance
18 law and is for selling of and advising on
19 insurance.
20 BY MR. SACHNIK:
21     Q.  So how much advice -- how much did AARP
22 provide to you in your purchase of the coverage?
23     A.  I believe -- and I'm not sure -- I've
24 learned subsequently.  But I believe I spoke to
25 an AARP person and got all my advice on the

1  insurance on that 800 number that went to AARP,
2  not to UnitedHealthcare, unbeknownst to me at
3  the time.
4         I also believe that the way AARP
5  advertises or -- with UnitedHealthcare, it
6  infers that they're giving -- that they've
7  reviewed the policy and are recommending it and
8  are advising you on it.
9     Q.   And that's entirely inconsistent with
10 the boilerplate disclosures, is it not, where it
11 says AARP is not an insurance agent?
12        MR. GHOZLAND: Objection. Calls for a
13 legal conclusion. Argumentative.
14        THE WITNESS: Well, I will agree it's
15 inconsistent. I've seen, in my history, people
16 lie before.
17 BY MR. SACHNIK:
18    Q.   Do you believe that the fee paid by
19 UnitedHealthcare to AARP is in part for the use
20 of AARP's name?
21        MR. GHOZLAND: Objection. Calls for a
22 legal conclusion. Vague. Ambiguous. Assumes
23 facts not in evidence. Calls for expert
24 opinion.
25        THE WITNESS: I believe -- well, I

Case 2:14-cv-00034-DDP-PLA Document 150-5 Filed 12/26/18 Page 10 of 12 Page ID #:5770
Jerald Friedman - November 12, 2018

111

1  have purchased at a lower cost if you had known
2  about the royalty?
3      A.  No, I cannot.
4      Q.  Do you have any additional items of
5  damage other than what you've testified to?
6          MR. GHOZLAND:  Objection.  Calls for a
7  legal conclusion.  Calls for expert testimony.
8          THE WITNESS:  Not that I can think of
9  right now.
10 BY MR. SACHNIK:
11     Q.  You are aware that you must fairly and
12 adequately protect the interests of the putative
13 class?
14     A.  Yes.
15     Q.  How do you intend to fairly and
16 adequately protect the interests of that class?
17     A.  By reviewing the pleadings.  Discussing
18 the case with my attorneys.  And seeing --
19 determining whether or not any judgment or
20 settlement fairly reflects benefits to the
21 holders of my class -- or members of my class.
22     Q.  Do you personally have a way to
23 identify members of the putative class?
24     A.  No.
25     Q.  Do you know who is in the proposed

Case 2:14-cv-00034-DDP-PLA Document 150-5 Filed 12/26/18 Page 11 of 12 Page ID #:5771
Jerald Friedman - November 12, 2018

112

1  class?
2      A.   I -- well, I believe it's members of --
3  people who took out insurance with AARP.  So I
4  don't know what you mean by that.
5      Q.   Is it limited to California?  Is it
6  nationwide?  Is it 15 states?
7      A.   I believe it's nationwide.
8      Q.   Are you aware of anyone else besides
9  yourself and Mrs. McGee who have complaints
10 about their Medicare coverage from
11 UnitedHealthcare?
12         MR. GHOZLAND:  Pursuant to the
13 allegations of the complaint or just generally
14 complaining?
15         MR. SACHNIK:  Just generally first.
16         THE WITNESS:  No.
17 BY MR. SACHNIK:
18     Q.   Do you know what other members of the
19 proposed class may have reviewed prior to
20 electing coverage?
21         MR. GHOZLAND:  Objection.  Calls for
22 speculation.
23         THE WITNESS:  No, I do not.
24 BY MR. SACHNIK:
25     Q.   Do you know what factors are most

```
 1   important to people in the state of California
 2   selecting Medicare coverage -- Medicare
 3   supplemental coverage?
 4           MR. GHOZLAND:  Objection.  Calls for
 5   speculation.
 6           THE WITNESS:  I would -- well,
 7   specifically, I have not taken a survey.  I
 8   would assume that similar concerns that I have.
 9   BY MR. SACHNIK:
10       Q.  Do you know which factors may be -- is
11   it possible that the different factors may be --
12   people may place different levels of importance
13   on those factors?
14           MR. GHOZLAND:  Objection.  Calls for
15   speculation.  Incomplete hypothetical.
16           THE WITNESS:  It is possible.
17   BY MR. SACHNIK:
18       Q.  Do you know if any of the proposed
19   class may have preexisting conditions which
20   might have prevented them from obtaining other
21   coverage?
22           MR. GHOZLAND:  Objection.  Calls for
23   speculation.
24           THE WITNESS:  I do not know.  I -- no.
25   I'll stop at that.
```