ROBBINS GELLER RUDMAN
  & DOWD LLP
STUART A. DAVIDSON, *pro hac vice*
CHRISTOPHER C. GOLD, *pro hac vice*
DOROTHY P. ANTULLIS, *pro hac vice*
RICARDO J. MARENCO, *pro hac vice*
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
cgold@rgrdlaw.com
dantullis@rgrdlaw.com
rmarenco@rgrdlaw.com

LAW OFFICES OF SEAN K. COLLINS
SEAN K. COLLINS (255198)
184 High Street, Suite 503
Boston, MA  02110
Telephone:  617/320-8485
617/227-2843 (fax)
sean@neinsurancelaw.com

Attorneys for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JERALD FRIEDMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>AARP, INC., AARP SERVICES INC., AARP INSURANCE PLAN, UNITEDHEALTH GROUP, INC. and UNITEDHEALTHCARE INSURANCE COMPANY,<br><br>Defendants. | Case No. 2:14-cv-00034-DDP-PLA<br><br><u>CLASS ACTION</u><br><br>PLAINTIFFS' RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF AFTER ORAL ARGUMENT<br><br>Judge:       Hon. Dean D. Pregerson<br>Magistrate:  Hon. Paul L. Abrams |

# TABLE OF CONTENTS

**PAGE**

I.    Introduction .................................................................................. 1

II.   Plaintiffs' Standing and Claim Under the UCL's "Unlawful" Prong Are Well-Pled ............................................................................... 2

III.  Plaintiffs Have Article III Standing ............................................ 6

      A.    The Charging of the Commission/Rebate Caused Plaintiffs to Pay More than They Should Have Paid ................................ 6

      B.    Defendants Are Not Shielded from Their Illegal Actions Based on Free-Market Principles .......................................... 8

      C.    The Court Should Reject Defendants' Repackaging of the Filed-Rate Doctrine as a Standing Argument ....................... 9

      D.    Plaintiffs' Injury Is Actual and Concrete, Not Speculative ............... 10

IV.  Plaintiffs' Substantive Commission and Rebating Allegations Are Plausible .................................................................................. 12

      A.    Plaintiffs' Commission-Based Claims Are Well-Pled ....................... 12

      B.    Group Policyholders May Not Receive Inducements to Insurance, Even if the Alleged Royalty Is Intellectual Property ........ 13

V.    Conclusion .................................................................................. 15

PLFS' RESP. TO DEFS' SUPPL. BR.
2:14-cv-00034-DDP-PLA

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE**

*Associated Cal. Loggers, Inc. v. Kinder*,
    110 Cal. App. 3d 673 (1980) ........................................................................ 14

*Backus v. Gen. Mills*,
    122 F. Supp. 3d 909 (N.D. Cal. 2015) ........................................................... 5

*Bloom v. AARP, Inc.*,
    No. 2:18-cv-02788-MCA-MAH, slip op. (D.N.J. Nov. 30, 2018) ............... 6, 11

*Candelore v. Tinder, Inc.*,
    19 Cal. App. 5th 1138 (2018) ........................................................................ 4

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ...................................................................................... 10

*Commonwealth v. Fuhrer*,
    52 Pa. D. & C.2d 142 (Ct. Com. Pl. 1970) ................................................... 15

*Ehret v. Uber Techs., Inc.*,
    68 F. Supp. 3d 1121 (N.D. Cal. 2014) ........................................................... 6

*Ellsworth v. U.S. Bank, N.A.*,
    908 F. Supp. 2d 1063 (N.D. Cal. 2012) ....................................................... 10

*Friedman v. AARP, Inc.*,
    855 F.3d 1047 (9th Cir. 2017) .................................................................. 1, 12

*Galvan v. KDI Distribution Inc.*,
    2011 WL 5116585 (C.D. Cal. Oct. 25, 2011) ............................................... 2

*Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*,
    465 F.3d 1123 (9th Cir. 2006) ...................................................................... 10

*In re Adobe Sys., Inc. Privacy Litig.*,
    66 F. Supp. 3d 1197 (N.D. Cal. 2014) .......................................................... 12

*In re Cal. Title Ins. Antitrust Litig.*,
    2009 WL 3756686 (N.D. Cal. Nov. 6, 2009) ................................................. 6

**PAGE**

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods.*
   *Mktg., Sale Practices & Prods. Liab. Litig.*,
   2017 WL 2646286 (E.D. Va. June 20, 2017)........................................................2

*In re Zappos.com, Inc.*,
   888 F.3d 1020 (9th Cir. 2018) ..........................................................................12

*Johnson v. Wal-Mart Stores, Inc.*
   544 F. App'x 696, 697 (9th Cir. 2013)................................................................8

*Julian v. Guarantee Life Ins. Co.*,
   159 Ala. 533 (1909)..........................................................................................14

*Klein v. Avis Rent A Car Sys. Inc.*,
   2009 WL 151521 (C.D. Cal. Jan. 21, 2009)......................................................7

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011)....................................................................................1, 3

*Leghorn v. Wells Fargo Bank, N.A.*,
   950 F. Supp. 2d 1093 (N.D. Cal. 2013) ...........................................................10

*Macomber v. Travelers Prop. & Cas. Corp.*,
   804 A.2d 180 (Conn. 2002)...........................................................................7, 8

*Maloney v. Indymac Mortg. Servs.*,
   2014 WL 6453777 (C.D. Cal. Nov. 17, 2014) ...................................................6

*Medina v. Safe-Guard Prods., Int'l., Inc.*,
   164 Cal. App. 4th 105 (2008)...........................................................................7

*Milkman v. Am. Travellers Life Ins. Co.*
   61 Pa. D. & C.4th 502, 526 (Com. Pl. 2002) ...................................................14

*Monarch Plumbing Co., Inc. v. Ranger Ins. Co.*,
   2006 WL 2734391 (E.D. Cal. Sept. 25, 2006) ...................................................5

*Peters v. Aetna Inc.*,
   2019 WL 1429607 (W.D.N.C. Mar. 29, 2019) .................................................11

*Peterson v. Cellco P'ship*,
   164 Cal. App. 4th 1583 (2008)..........................................................................7

1

**PAGE**

2 *Pirozzi v. Apple, Inc.*,

3     966 F. Supp. 2d 909 (N.D. Cal. 2013) ................................................................ 1

4 *Rosales v. FitFlop USA, LLC*,

5     882 F. Supp. 2d 1168 (S.D. Cal. 2012) ............................................................ 4

6 *State of N.M. ex rel. Stratton v. Gurley Motor Co.*,

    737 P.2d 1180 (N.M. Ct. App. 1987) ............................................................ 15

7

**STATUTES, RULES AND REGULATIONS**

8

9 California Business & Professions Code

    §17204 ................................................................................................................ 3

10

11 California Insurance Code

    §10192.14 ........................................................................................................ 11

12     §10214 ..................................................................................................... 1, 8, 9

    §10430 ............................................................................................................ 13

13

14 General Statutes of Connecticut

    §38a-816 .......................................................................................................... 9

15     §38a-825 .................................................................................................... 8, 13

16 **SECONDARY AUTHORITIES**

17

New York State Department of Financial Services, Office of General Council

18     Op. No. 11-01-02 (Jan. 5, 2011) ................................................................... 14

19

20

21

22

23

24

25

26

27

28

    PLFS' RESP. TO DEFS' SUPPL. BR.
2:14-cv-00034-DDP-PLA

1    Pursuant to the Court's June 13, 2019 (In Chambers) Order [ECF No. 191],
2    Plaintiffs[1] respectfully submit this response to Defendants' Supplemental Brief After
3    Oral Argument [ECF No. 186] ("Defs' Suppl. Br.").

4    **I.    Introduction**

5        The Court's analysis of both Defendants' Motion to Dismiss and Plaintiffs'
6    Motion for Class Certification should start with asking the following question:
7    "What if Defendants' 'royalty' arrangement is, in fact, an illegal rebate or
8    commission?" What if, ***as the Ninth Circuit already found plausibly alleged***,
9    Plaintiffs ***prove*** that the 4.9% "royalty" is actually a disguised commission? *See*
10   *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1050 (9th Cir. 2017) (reversing dismissal
11   after noting that "[w]hether this [4.9%] deduction was plausibly alleged to be an
12   insurance commission is a key issue on this appeal"). If there is literally no remedy
13   for that illegal conduct, then Plaintiffs lose. But, if there is a remedy (*e.g.*, a
14   permanent injunction; Cal. Ins. Code §10214; restitution), Plaintiffs win. Defendants
15   implicitly acknowledge that this is a threshold question. *See* Defs' Suppl. Br. at 5
16   (arguing that the Court and jury are powerless "[e]ven if the royalty payment were
17   illicit under any of the rationales that plaintiffs have put forward").

18       Plaintiffs need only allege an "intangible" injury (loss of money or property
19   is not required) under Article III, *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 919
20   (N.D. Cal. 2013), and a "loss of money or property in any nontrivial amount" to
21   show UCL standing, *id.* (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 325
22   (2011)). These constitutional and statutory thresholds are not the impenetrable shield
23   against otherwise well-pled allegations of wrongdoing Defendants claim them to be.

24       In this case, setting aside their claims for conversion, money had and received,

---

25
26   [1]   Unless otherwise noted, all capitalized words herein are defined in Plaintiffs'
     Memorandum of Points and Authorities in Opposition to Defendants' Joint Motion
27   to Dismiss First Amended Complaint [ECF No. 147] ("MTD Opp.") and Plaintiffs'
     Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Class
28   Certification [ECF No. 150-1].

1  and financial elder abuse based on clear and unassailable allegations of "wrongful

2  use," Plaintiffs have properly alleged their injury from Defendants' "royalty"

3  scheme and, therefore, possess both Article III and UCL standing.

4  **II.    Plaintiffs' Standing and Claim Under the UCL's "Unlawful"**
   **Prong Are Well-Pled**[2]

5

6  If there can never be an injury (and no standing) for violations of the

7  "unlawful" prong where the consumer receives a non-defective good/service, then

8  the unlawfulness continues in perpetuity – the result for which Defendants advocate.

9  Defendants are attempting to gut the unlawful prong of the UCL, and the consumer-

10  watchdog function it serves, by making it more difficult to plead than the fraudulent

11  prong. That cannot be the law, and it is not.

12  As a starting point, Plaintiffs are not required to show reliance to establish

13  standing under the unlawful prong of the UCL. *See Galvan v. KDI Distribution Inc.*,

14  2011 WL 5116585, at *9 (C.D. Cal. Oct. 25, 2011) ("A UCL violation that is not

15  based on a fraud theory involving false advertising and misrepresentations to

16  consumers does not require a showing of reliance or causation.")[3]; *see also In re*

17  *Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sale Practices*

18  *& Prods. Liab. Litig.*, 2017 WL 2646286, at *15 (E.D. Va. June 20, 2017) (holding

19  reliance is not an element an unlawful prong claim and that "[t]he sole issue for this

20  Court to determine under the unlawful prong of the UCL is therefore whether there

21  is sufficient evidence to establish that [defendant] violated any law or regulation

22  which would, in turn, serve as a predicate for a UCL unlawful violation").

23  Defendants erroneously claim that Plaintiffs have not and ***cannot*** establish an

24

---

25  [2]    Plaintiffs have also properly alleged, and have standing to pursue, their claim
       under the UCL unfair prong.

26

27  [3]    Citations, internal quotations, and footnotes omitted and emphasis added unless
       noted otherwise.

28

economic injury or a "causal nexus" between Defendants' unlawful acts and their economic injury because they purportedly received the benefit of their bargain. Defs' Suppl. Br. at 3-4. As discussed below, Defendants are wrong. There is a difference between a case where a plaintiff receives a non-defective good for a set price and then seeks restitution of an undifferentiated portion of the purchase price due to a technical violation of the law, and a case where, as here, a plaintiff receives a non-defective good for a price that includes an identifiable illegal commission/rebate that was charged as a result of an unlawful practice. The latter scenario demonstrates an immediate connection between the economic injury and the unlawful practice, whereas the former does not. If this distinction was immaterial, as Defendants contend, then no consumer would ever be able to successfully bring an unlawful UCL claim – no matter how large of an unlawful charge, rebate, or commission a defendant extracted – so long as the consumer received a non-defective good. Such a conclusion is out of step with the UCL's purpose of protecting "both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Kwikset*, 51 Cal. 4th at 320. Moreover, common sense dictates that retailers of all stripes cannot have *carte blanche* to reap illegal profits so long as they provide the promised services or products.

In reality, Plaintiffs are simply required to show that they "suffered injury in fact and [have] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code §17204. Plaintiffs have done just that by alleging that Defendants engaged in an illegal scheme whereby AARP retained 4.9% of Plaintiffs' premiums (on top of the "gross premium") as an unlawful rebate/commission. ¶¶103-109. The outcome of this scheme – necessarily carried out via Defendants' unlawful acts – was that Plaintiffs were injured by paying 4.9% above the true group premium (*i.e.*, the "gross premium") as an illegal commission or rebate. ¶¶62, 69-70, 74, 85, 117, 146; *see also* Exhibit B, Expert Report of Bryan F. Miller, FSA, MAAA as of

February 27, 2019, to the Supplemental Declaration of Stuart A. Davidson in Further Support of Plaintiffs' Motion for Class Certification [ECF No. 164-1], at 6-7, 10. These allegations are sufficient to demonstrate both an economic injury and a "causal nexus" between AARP's unlawful conduct and Plaintiffs' injuries; indeed, Defendants intended to effectuate this precise result.[4]

In its Order, this Court directed the parties to "[i]dentify cases, if any, alleging UCL injury under the unlawful prong, where such injury does not rely or relate to the fraudulent prong as well." If Defendants' benefit of the bargain defense applied to any of the three cases that follow, then none of the plaintiffs therein would have been able to recover for their injuries, since they received a non-defective product.

In *Candelore v. Tinder, Inc.*, 19 Cal. App. 5th 1138 (2018), the court found that the plaintiff had sufficiently alleged a UCL claim under the unlawful prong where he claimed the defendant had violated the Unruh Civil Rights Act by charging him more for the dating application than other users based on his age difference. *Id.* at 1155. Specifically, the plaintiff alleged that the defendant charged consumers over age 30 $19.99 for an enhanced set of features, while it only charged $9.99 or $14.99 to consumers under age 30 for the same set of features. *Id.* at 1142. This set of facts is structurally similar to the facts in this case where Defendants charged Plaintiffs a 4.9% illegal commission, to be unlawfully paid to AARP in violation of the California Insurance Code, on top of the "gross premiums." Stated another way, the plaintiffs here and in *Tinder* allege that the price charged by the defendants included an identifiable portion that was unlawful due to the defendants' violation of a law or regulation. Additionally, neither the *Tinder* plaintiff nor Plaintiffs here alleged that they received defective or nonconforming services.

---

[4] The fact that Defendants' illegal scheme presents some complexity does not constitute a barrier to finding that Plaintiffs' injury occurred as a result of Defendants' unlawful practices. *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1175 (S.D. Cal. 2012) ("[C]ausation does not fail simply because there are several links in the causal chain, so long as they are linked in a plausible manner.").

1        The court in *Backus v. Gen. Mills*, 122 F. Supp. 3d 909 (N.D. Cal. 2015),

2    upheld a UCL claim under the unlawful prong where the plaintiff alleged that the

3    defendant's sale of baking mixes violated state law. *Id.* at 926. The court found that

4    the plaintiff had alleged an economic injury even though there were "no allegations

5    that the baking mixes did not function properly." *Id.* at 921. The court indicated that

6    the fact that plaintiff had received the benefit of the bargain was of no matter since

7    the plaintiff alleged "that the sale of the baking mixes is actually illegal, and that he

8    would not have even been able to spend money on them if [the defendant] had

9    complied with California law." *Id.* In similar fashion, Plaintiffs allege that they

10   would not have paid the 4.9% illegal rebate/commission to AARP, had Defendants

11   complied with the California Insurance Code. ¶¶117-119.

12       Although Defendants attempt to distinguish *Monarch Plumbing Co., Inc. v.*

13   *Ranger Ins. Co.*, 2006 WL 2734391 (E.D. Cal. Sept. 25, 2006), the fact is that the

14   plaintiff there alleged a UCL unlawful claim structurally similar to Plaintiffs' claim

15   here. *See id.* at *6; Defs' Suppl. Br. at 6 n.8. The *Monarch* plaintiff alleged that the

16   defendant violated a statute that required it to retain independent counsel because its

17   interests conflicted with plaintiff's, and that he was injured by paying "higher

18   insurance premiums-that may have resulted from a decision by allegedly biased

19   counsel to settle meritless claims." *Id*. Based on those allegations, the court found

20   that the claim was sufficiently pled. *Id.* This case, like the cases that precede it,

21   involves a situation where the court found that the plaintiff suffered an economic

22   injury as a result of the defendant's unlawful act, despite the fact that he received a

23   non-defective product. Plaintiffs' UCL claim under the unlawful prong is identical

24   and should be afforded the same treatment.

25

26

27

28

### III.   Plaintiffs Have Article III Standing

####   A.   The Charging of the Commission/Rebate Caused Plaintiffs to Pay More than They Should Have Paid

Defendants argue "Plaintiffs each received the benefit of their bargain with [United]." Defs' Suppl. Br. at 3. They are wrong. While Plaintiffs received the bargained-for insurance, they did not receive it at the bargained-for price: the premium necessary to bind coverage (*i.e.*, the "Gross Premium").

Plaintiffs allege, and can prove, that they paid inflated premiums to United as a result of the royalty. *See* ¶¶22, 27-28, 52, 74, 83, 114-119, 139, 160, 162. For the reasons stated in the MTD Opp., charging Plaintiffs more than the premium required to secure coverage through United is a clear breach of contract resulting in Plaintiffs' overpayment. *See id.* at 18-20. That is a classic injury-in-fact. And charging unlawful rebates/commissions that would not otherwise have been baked into Plaintiffs' "member contributions" (*i.e.*, "gross premium" plus "royalty") – a violation of the UCL and CUTPA and the California and Connecticut insurance codes – results in a straightforward economic injury: the loss of 4.9%. *See Bloom v. AARP, Inc.*, No. 2:18-cv-02788-MCA-MAH, slip op. at 5 (D.N.J. Nov. 30, 2018) (same "royalty" found to be an ascertainable loss); *In re Cal. Title Ins. Antitrust Litig.*, 2009 WL 3756686, at *7 (N.D. Cal. Nov. 6, 2009).[5]   Further, as explained below, the Court does not need to infer that the AARP brand is worthless (though United documents indicate just that) to find Plaintiffs were injured via an inflated premium; the anti-rebating laws do not allow this type of payment ***even if it was for a legitimate "royalty."*** *See also* Plaintiffs' Supplemental Briefing Following Oral Argument

---

[5]   Defendants' argument that *Cal. Title Ins. Antitrust* and *Maloney v. Indymac Mortg. Servs.*, 2014 WL 6453777 (C.D. Cal. Nov. 17, 2014), are distinguishable from the instant case because plaintiffs there had no choice, Defs' Suppl. Br. at 4-5 n.5, disregards established case law that such a choice is inapt to a standing analysis, *see, e.g., Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1134 (N.D. Cal. 2014) ("Whether Plaintiff had the option of not paying the additional fee (the 20% gratuity) because it was integral to Uber's charge is immaterial to standing under the UCL.").

PLFS' RESP. TO DEFS' SUPPL. BR.
2:14-cv-00034-DDP-PLA

1  [ECF No. 187] ("Plfs' Suppl. Br.") at 6.

2      Defendants' repeated reliance on inapposite cases does not compel a different

3  finding. *See* Defs' Suppl. Br. at 3-6 & n.5. First, as Plaintiffs have previously argued,

4  the primary flaw in *Medina v. Safe-Guard Prods., Int'l., Inc.*, 164 Cal. App. 4th 105

5  (2008); *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583 (2008); and *Klein v. Avis*

6  *Rent A Car Sys. Inc.*, 2009 WL 151521 (C.D. Cal. Jan. 21, 2009), is that the plaintiffs

7  did not allege that they were harmed as a result of the defendants' conduct. Here,

8  Plaintiffs have not only alleged that they were injured and that their injuries were

9  caused by the commission/rebate, but they provided a highly qualified Medicare

10  supplement actuary who opined that an injury occurred due to the charging of the

11  "royalty" – an expert that Defendants have utterly ignored. Second, *Medina*,

12  *Peterson*, and *Klein* all involve reimbursement of legitimate expenses of the plan,

13  which AARP already receives separately from the "royalty."

14      Last, Plaintiffs have also alleged that they suffered injury as a result of

15  Defendants' conversion and money had and received, as well as Defendants' taking

16  for a wrongful use in violation of California's financial elder abuse statute – a point

17  that Defendants continue to ignore. These claims all simply require, at their core, a

18  wrongful taking. Plaintiffs have the right to decide where their money goes, and how

19  it is used. MTD Opp. at 22-24. Plaintiffs' lost ownership rights over the dispensation

20  of that money is an injury-in-fact caused by Defendants' taking of Plaintiffs' money

21  and secretly diverting it to AARP – in an amount more than double what United

22  earns in profits as the actual insurer. *See id.*

23      Remedies available for Plaintiffs' injuries are damages and injunctive relief.

24  This relief can be either a direct return of the illegal overpayment or the return of

25  value and ownership rights over the 4.9% (and investment proceeds) through a return

26  of the funds to the Rate Stabilization Fund ("RSF"), to be held and used for member-

27  insureds' benefit. *See* Plfs' Suppl. Br. at 18-19; *see also Macomber v. Travelers*

28

*Prop. & Cas. Corp.*, 804 A.2d 180, 190-91 (Conn. 2002) (injury stated for reduced value in annuity as a result of insurer's "rebating and short-changing schemes").

## B. Defendants Are Not Shielded from Their Illegal Actions Based on Free-Market Principles

Defendants contend that free-market actors are entitled to charge whatever they wish, so even if a portion of their charges were retrospectively deemed illegal, there was nothing stopping them from charging the same amount if the illegal conduct had been eliminated. This argument cannot stand.

First, it again wrongly assumes that Plaintiffs are attempting to eliminate AARP Medigap entirely, rather than just the "royalty." United could not have charged whatever it wanted since it is bound by the legal and enforceable provisions of its agreement with AARP that place limits on United's profits and program expenses. Second, this argument, if true, would immunize most defendants from all sorts of consumer fraud – even criminal conduct. In *Johnson v. Wal-Mart Stores, Inc.*, the Ninth Circuit reversed dismissal of a case alleging that Wal-Mart misrepresented a nine dollar "recycling fee" as required by California law when the plaintiff purchased a car battery. 544 F. App'x 696, 697 (9th Cir. 2013). Clearly, it would be absurd to permit Wal-Mart to argue that the plaintiff had no standing because Wal-Mart could have simply charged nine dollars more for the car battery. It would be similarly absurd to let a company like Volkswagen claim that it was free to charge whatever it wanted for its not-so "clean diesel" vehicles, so consumers were not injured. These are precisely the arguments Defendants make here.

Defendants also argue that the relief sought, return of the 4.9%, would itself violate anti-rebating laws. Defs' Suppl. Br. at 7-8. Not so. Connecticut law provides for an exception to its anti-rebating statute, which has the same aim as Cal. Ins. Code §10214: "None of the following practices shall be considered . . . a rebate within the meaning of section 38a-825: . . . (C) readjustment of the rate of premium for a group

PLFS' RESP. TO DEFS' SUPPL. BR.
2:14-cv-00034-DDP-PLA

insurance policy based on loss *or expense* experience, or both, at the end of the first or any subsequent policy year, which may be made retroactive for such policy year." Conn. Gen. Stat. Ann. §38a-816; *see also* Cal. Ins. Code §10214 ("If hereafter . . . any premium refunded under any policy of group life insurance heretofore or hereafter issued, the excess, if any, of the aggregate dividends or premium refunds under such policy over the aggregate expenditures for insurance under such policy made from funds contributed by the policyholder . . . or association to which such insured persons belong, including expenditures made in connection with the administration of such policy, shall be applied by the policyholder for the benefit of such . . . insured members generally or their dependents."). An order by this Court deeming the "royalty" an illegal rebate would result in a retroactive readjustment of the premium for the group insurance based on a favorable expense experience (*i.e.*, the "royalty" expense would  be returned). Thus, Defendants' current failure to return the "royalty" to the Class/insurance plan and apply it as a favorable expense experience is causing financial injury to Plaintiffs and the Class right now.

### C.     The Court Should Reject Defendants' Repackaging of the Filed-Rate Doctrine as a Standing Argument

Defendants do not simply argue that Plaintiffs did not pay more than they should have paid for AARP Medigap. Instead, Defendants argue that Plaintiffs *could not* have paid less because Plaintiffs paid "the premium approved by the DOI as reasonable and sufficient for their plans[.]" Defs' Suppl. Br. at 1, 6 ("[United's] overall premiums were reasonable as a matter of law, per DOI's approval"). This is simply a rehashing of the filed-rate doctrine argument, an issued that was previously decided by this Court, and conceded as no longer pursued by Defendants. Motion to Dismiss First Amended Complaint; Motion for Class Certification Transcript of Proceedings (May 13, 2019) ("H'rg Tr.") at 42:2-7.

Defendants' theory would immunize any insurer or non-insurance third-party

PLFS' RESP. TO DEFS' SUPPL. BR.
2:14-cv-00034-DDP-PLA

1   receiving unlawful rebates. Title insurance (a DOI rate-regulated product) kickback

2   precedent in this Circuit suggests that this is not the law. *See Leghorn v. Wells Fargo*

3   *Bank, N.A.*, 950 F. Supp. 2d 1093 at 1101-03, 1116 (N.D. Cal. 2013) (rejecting

4   application of the filed-rate doctrine to title insurance kickbacks); *Ellsworth v. U.S.*

5   *Bank, N.A.*, 908 F. Supp. 2d 1063, 1082-83 (N.D. Cal. 2012) (an action based on

6   costs incurred as a result of an alleged kickback scheme does not transform a

7   challenge to conduct into a challenge to the premiums). For the same reasons, the

8   Court should deny Defendants' similar arguments here.

9   **D.   Plaintiffs' Injury Is Actual and Concrete, Not Speculative**

10   According to Defendants, the DOI's role "in the review and approval of any

11   Medigap rate charged by UnitedHealth" supports their conclusion that Plaintiffs'

12   theory of injury is "too conjectural to establish an injury-in-fact[.]" *See* Defs' Suppl.

13   Br. at 7 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013); *Glanton ex*

14   *rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1125 (9th

15   Cir. 2006)). But here, unlike in *Glanton*, Plaintiffs' theory does not require

16   speculation as to how an "independent actor" would have exercised their discretion

17   in order to find injury. *Glanton*, 465 F.3d at 1125. Both United and the DOI are

18   bound by law and do not retain "broad and legitimate discretion" to seek or approve

19   rates containing illegal payments.[6] In addition, if the "royalty" were deemed an

20   illegal expense that was returned to class members directly or via the RSF, the DOI

21   would have no involvement. *See* Plfs' Suppl. Br. at 18-19. Accordingly, it is not

22   necessary to determine whether, absent the royalty, United's proposed rates would

23   have changed, or whether the DOI would have approved those rates; such rates

24   (whatever they would have been) would not have included the illegal royalty.

25

26   [6]   For the same reasons, Defendants' reference to *Clapper* is inapt. Moreover, the
     section of *Clapper* that Defendants reference in support of their "independent
27   decisionmakers" argument, Defs' Suppl. Br. at 7, does not concern an inquiry into
     actual injury, but rather considers prospective harm dependent on the future actions
28   of an independent decisionmaker, *Clapper*, 568 U.S. at 413.

1    Additionally, there is no basis for assuming that the DOI would disapprove 4.9%

2    lower rates, when all legal program expenses are fully accounted for in these legal

3    rates, including at the same level as before.

4            Defendants further contend that Plaintiffs' theory of injury is speculative

5    because they purportedly cannot show that United's customer acquisition expenses

6    would have been lower absent its license of AARP's intellectual property ("IP").

7    Defs' Suppl. Br. at 8-9 (citing *Peters v. Aetna Inc.*, 2019 WL 1429607, at *6-*7

8    (W.D.N.C. Mar. 29, 2019)). And, even if United's non-benefit expenses were lower

9    than projected, Defendants argue that United would not be permitted to refund

10   premiums. Defs' Suppl. Br. at 7-8. Both arguments fail. The first argument attempts

11   to shift the focus from the proper legal inquiry implicated by Plaintiffs' claims (*i.e.*,

12   a determination of what amount of money Defendants took from Plaintiffs in

13   violation of the UCL and other laws, that would not have been charged otherwise)

14   to an inquiry that suits Defendants' arguments but is irrelevant to Plaintiffs' claims

15   (*i.e.*, what individual policies of Medicare supplement insurance in a hypothetical

16   world would have cost if AARP had not agreed to sponsor the group plan). *See* Plfs'

17   Suppl. Br. at 15-17.[7] Defendants' second argument that United is legally prohibited

18   from refunding Plaintiffs' premiums is incorrect for the reasons discussed in §III.B.,

19   *supra*, and Plfs' Suppl. Br. at 18-19 (explaining Cal. Ins. Code §10192.14 does not

20   ban experience-based premium refunds due to a favorable expense experience).

21           Moreover, even if Plaintiffs' economic injury is speculative, which it is not,

22   the Court may nevertheless enjoin the enforcement of Defendants' illegal agreement.

23   "Since *Clapper*, the Court reemphasized . . . that [a]n allegation of future injury may

24

25   ───────────────────
     [7]    Thus, this Court's analysis of Plaintiffs' claims through the appropriate lens
26   renders Defendants' reference to *Peters* inapposite. Even assuming *Peters* is relevant
     to the resolution of Plaintiffs' claims, it is inapplicable because it ignores the directly
27   on-point holding in *Bloom*, slip op. at 5, where the court found that the plaintiff
     adequately alleged the requisite elements of injury based on the diversion of the
28   4.95% illegal "royalty"/commission to AARP. *See also* Plfs' Suppl. Br. at 17-18.

suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *In re Zappos.com, Inc.*, 888 F.3d 1020, 1026 (9th Cir. 2018). Plaintiffs have provided sufficient facts to demonstrate that AARP is illegally taking a 4.9% commission/rebate that it should not be taking, thus an injunction should be issued as to this conduct. Additionally, even if the Court were to find that the risk of losing Medigap coverage stemming from AARP taking wrongful possession of and investing premiums is not "certainly impending," it should still find that Plaintiff McGee has demonstrated a "substantial risk that the harm will occur." *Id.* Plaintiffs have shown that, unbeknownst to insureds, AARP invests Plaintiffs' premiums for its own benefit, and that if any premium is unpaid, the Group Policy ends. To be sure, AARP lost over $3.9 million by investing insureds' premiums in 2015 alone, showing the risk of loss from AARP's unregulated and unmonitored investing is real. *Id.* "[T]o require Plaintiff[s] [McGee] to wait until [she] actually suffer[s] [a loss of her policy] in order to have standing would run counter to the well-established principle that harm need not have already occurred or be literally certain in order to constitute injury-in-fact." *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1214-15 (N.D. Cal. 2014).

## IV.    Plaintiffs' Substantive Commission and Rebating Allegations Are Plausible

### A.    Plaintiffs' Commission-Based Claims Are Well-Pled

Defendants do not challenge Plaintiffs' allegations that AARP illegally engaged in the solicitation and transaction of insurance and that the royalty is a commission. Indeed, the Ninth Circuit has already found this to be the case. *Friedman*, 855 F.3d at 1052-53. Rather, Defendants argue in a footnote that Plaintiffs' "solicitation theory" fails on standing grounds. Defs' Suppl. Br. at 10 n.9. This argument is incorrect for the reasons stated above and in prior briefing.

### B. Group Policyholders May Not Receive Inducements to Insurance, Even if the Alleged Royalty Is Intellectual Property

Plaintiffs allege the "royalty" is not really a licensing fee for IP, but even if it is and AARP's IP is actually worth hundreds of millions of dollars a year, the arrangement still runs afoul of the anti-rebating laws since the payment is still being offered as an *inducement* for AARP to insure its group plan with United.[8] ¶¶20, 109, 112-113 ("Therefore even if the 4.9% payment was determined to be an actual 'royalty' (which it is not), the 'royalty' side arrangement between Defendants is still a violation of both California Insurance Code §10430 and General Statutes of Connecticut §38a-825 as an illegal inducement to insurance.").

Defendants attempt to equate the AARP "royalty" to a payment for "products or services" that is permissibly reimbursable under anti-rebating laws ignores that: (1) *inducements* to insurance are still illegal[9]; and (2) Defendants expressly disclaim that the "royalty" is payment for a service. *Compare* Defs' Suppl. Br. at 10 ("[N]umerous courts have recognized that *insurers can lawfully transact, for value, with group policyholders for products and services*." (emphasis in original)), *with* Defendants' Reply in Support of Joint Motion to Dismiss [ECF No. 155] at 13 n.12

---

[8]   Defendants' argument that "[i]t defies common sense to suggest that [United] agreed to pay more for the IP than [United] believed it was worth[,]" Defs' Suppl. Br. at 14, misses Plaintiffs' point. Plaintiffs allege the payment is not for IP, but even if it was, the payment is still made to *induce* AARP to insure its group plan with United. Relatedly, Defendants' assertion that "[i]t is implausible to infer that the AARP brand is worthless or that [United] ascribed no value to that goodwill[,]" is specious. Defendants know they possess AARP logo valuation studies that support Plaintiffs' position, which Defendants failed to produce and Plaintiffs only recently discovered to exist. *See* H'rg Tr. at 17:18-24; 75:22-76:4.

[9]   Defendants' injury arguments speculating about a world without AARP Medigap are an admission that if AARP did not receive the "royalty," then it would disband the group insurance plan altogether (*i.e.*, the "royalty" induces AARP to insurance). *See* Plaintiffs' Reply Memorandum of Points and Authorities in Further Support of Plaintiffs' Motion for Class Certification [ECF No. 164] at 1, 12, 18-19. To be sure, eliminating the "royalty" payment is not the same as eliminating AARP Medigap. ¶78; *see also* H'rg Tr. at 95:20-96:3 (clarifying it is the "royalty" payment Plaintiffs take issue with, not the insurance program as a whole).

PLFS' RESP. TO DEFS' SUPPL. BR.
                                        2:14-cv-00034-DDP-PLA

1  ("Defendants' reference to case language that includes the term 'services' . . .

2  obviously does not imply that an [IP] license is a 'service.'").

3       The cases Defendants cite, *Associated Cal. Loggers, Inc. v. Kinder*, 110 Cal.

4  App. 3d 673 (1980), and *Julian v. Guarantee Life Ins. Co.*, 159 Ala. 533 (1909),

5  involve insurers reimbursing a group policyholder/insured for actual ***services***

6  rendered, not payments that would induce a policyholder to insurance.[10] *Julian*, 159

7  Ala. at 537; *Kinder*, 110 Cal. App. 3d at 680. In contrast to these cases, here we have

8  an "allowance" payment for the "sponsorship" of a group insurance plan, which was

9  later reworded to a "royalty" for an "endorsement" and finally a "royalty" solely for

10  the use of IP, all of which Defendants disclaim has anything to do with payment for

11  a service. As the FAC makes clear, Plaintiffs do not take issue with United

12  reimbursing AARP for services actually rendered. *See* ¶¶ 67, 78, 101, 203.

13       Defendants' citation to *Milkman v. Am. Travellers Life Ins. Co.*, a class

14  settlement decision, like their citation to *Kinder*, leaves out critical language in the

15  holding that is directly applicable here: "a determination in favor of legality is further

16  advanced by the fact that ***there is no evidence whatsoever that the settlement is a***

17  ***ruse to sell additional insurance and to evade anti-rebate statutes***." 61 Pa. D. &

18  C.4th 502, 526 (Com. Pl. 2002); *see also Kinder*, 110 Cal. App. 3d at 680-81 (after

19  trial, court found "that the agreements were not offered as an inducement to purchase

20  insurance . . . there was no evidence that the agreements were a sham or a cover for

21

22  [10]  Defendants' contention that "the precise nature of the economic exchange" is irrelevant in analyzing whether a payment between an insurer and a policyholder

23  violates anti-rebating laws, so long as there was an "economic transaction for value actually provided by the policyholder," is untrue. Defs' Suppl. Br. at 13. If that logic

24  were correct, anti-rebating laws would be gutted wherever something of value was exchanged. Plaintiffs do not allege United received no value from AARP; AARP's

25  selection of United as the underwriter of AARP's plan is very valuable to United, but it is illegal for United to pay AARP in order to influence that placement decision,

26  even under the auspices of a "royalty." *See* NYSDFS OGC Op. No. 11-01-02 (Jan. 5, 2011) ("[T]he insurance producer may not pay any compensation to the

27  association for the association to provide access to the association's employer members . . . . Any such payment would constitute a rebate or inducement . . . and

28  an unlawful payment of commissions by a producer to an unlicensed person.").

1    illegal rebates or commissions").

2         Defendants ignore this language in *Milkman* and *Kinder* because it is precisely

3    what Plaintiffs allege is happening here: the "royalty" label is a cover to evade anti-

4    rebating/licensing laws, and under any name, it is still an inducement. *See State of*

5    *N.M. ex rel. Stratton v. Gurley Motor Co.*, 737 P.2d 1180, 1182 (N.M. Ct. App.

6    1987) (reversing a dismissal and holding that the state had adequately alleged

7    violations of insurance licensing and anti-rebating statutes by alleging defendant

8    solicited insurance and took commissions out of customers' premiums).[11]

9         Defendants also argue the "royalty" is paid for more than just the AARP logo,

10   namely for access to AARP's membership list. Defs' Suppl. Br. at 13-14, 16. But

11   Defendants themselves value this part of the arrangement as worth just 8% of the

12   "royalty" fee: "For Membership Information . . . United shall pay to [AARP]

13   Services an amount equal to eight percent (8%) of the amount computed pursuant to

14   Article 6 of the United Agreement." FAC Exh. D at 113.[12]

15   **V.    Conclusion**

16        Defendants' Motion to Dismiss should be denied, and Plaintiffs' Motion for

17   Class Certification should be granted.

18

19

20   ──────────────
     [11]  In *Commonwealth v. Fuhrer*, 52 Pa. D. & C.2d 142 (Ct. Com. Pl. 1970), another
21   case cited and incorrectly summarized in Defs' Suppl. Br. at 11-12, an insurer was
     accused of offering an illegal rebate arrangement by indicating to a bank that the
22   insurer would open an account at the bank to hold insurance premiums collected by
     the bank on behalf of the insurer. *Id.* at 144. The *Fuhrer* court held this proposal did
23   not run afoul of the Pennsylvania anti-rebating law. *Id.* at 145. Unlike the present
     case, the bank in *Fuhrer* was not a group policyholder and was not due to receive a
24   percentage-based portion of the insurance payments as inducement to insurance.

25   [12]  Relatedly, AARP Services, Inc. ("ASI") is reimbursed for its "quality control"
     activities in "an amount equal to [ASI's] costs to perform such services, plus ten
26   percent (10%)." *Id.*; *see also* FAC at 19-20 n.11. Plaintiffs do view these payments
     as problematic; regardless, a fact finder could determine the fee paid for the
27   membership list and quality control are legitimate and reimbursable, while still
     finding the balance of the "royalty" to be an illegal rebate/commission.

28                                          - 15 -      PLFS' RESP. TO DEFS' SUPPL. BR.
                                                        2:14-cv-00034-DDP-PLA

1    DATED:  June 21, 2019

2

ROBBINS GELLER RUDMAN
   & DOWD LLP
STUART A. DAVIDSON
CHRISTOPHER C. GOLD
DOROTHY P. ANTULLIS
RICARDO J. MARENCO

3

4

*s/ Stuart A. Davidson*

5

Stuart A. Davidson

6

120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-300
561/750-3364 (fax)
sdavidson@rgrdlaw.com
cgold@rgrdlaw.com
dantullis@rgrdlaw.com
rmarenco@rgrdlaw.com

7

8

9

10

LAW OFFICES OF SEAN K. COLLINS
SEAN K. COLLINS (255198)
184 High Street, Suite 503
Boston, MA  02110
Telephone:  617/320-8485
617/227-2843 (fax)
sean@neinsurancelaw.com

11

12

13

14

GHOZLAND LAW FIRM
MICHAEL F. GHOZLAND
555 West Fifth Street, Suite 3100
Los Angeles, CA  90013
Telephone:  213/996-8327
213/402-5147 (fax)
michael@ghozlandlawfirm.com

15

16

17

18

GLANCY PRONGAY
   & MURRAY LLP
EX KANO S. SAMS II
1925 Century Park East Suite 2100
Los Angeles, CA  90067
Telephone:  310/201-9150
310/432-1495 (fax)
esams@glancylaw.com

19

20

21

22

EVANS LAW FIRM, INC.
INGRID EVANS
3053 Fillmore Street, Suite 236
San Francisco, CA  94123
Telephone:  415/441-8669
888/891-4906 (fax)
ingrid@evanslaw.com

23

24

25

26

Attorneys for Plaintiffs and the
Proposed Class

27

28

- 16 -   PLFS' RESP. TO DEFS' SUPPL. BR.
2:14-cv-00034-DDP-PLA

<u>**CERTIFICATE OF SERVICE**</u>

1

2          I hereby certify that on June 21, 2019, I authorized the electronic filing of the

3   foregoing with the Clerk of the Court using the CM/ECF system which will send

4   notification of such filing to the e-mail addresses denoted on the attached Electronic

5   Mail Notice List, and I hereby certify that I caused to be mailed the foregoing

6   document or paper via the United States Postal Service to the non-CM/ECF

7   participants indicated on the attached Manual Notice List.

8          I certify under penalty of perjury under the laws of the United States of

9   America that the foregoing is true and correct.

10  Executed on June 21, 2019.

11                                                    *s/ Stuart A. Davidson*
                                                      STUART A. DAVIDSON
12
                                                      ROBBINS GELLER RUDMAN
13                                                      & DOWD LLP
                                                      120 East Palmetto Park Road, Suite 500
14                                                    Boca Raton, FL  33432
                                                      Telephone:  561/750-3000
15                                                    561/750-3364 (fax)
                                                      sdavidson@rgrdlaw.com
16

17

18

19

20

21

22

23

24

25

26

27

28                                      - 17 -      PLFS' RESP. TO DEFS' SUPPL. BR.
                                                    2:14-cv-00034-DDP-PLA